# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALCRESTA THERAPEUTICS, INC.<br>One Newton Executive Park<br>Newton, MA 02462<br><br>JAMES HENRY<br>3514 Perrin Drive<br>Haw River, NC 27258<br><br>STEPHANIE A. WEBSTER<br>Ropes & Gray LLP<br>2099 Pennsylvania Avenue, NW<br>Washington, D.C. 20006<br><br>Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, Secretary,<br>Department of Health & Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201<br><br>CHIQUITA BROOKS-LASURE, Administrator,<br>Centers for Medicare & Medicaid Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201<br><br>Defendants. | Case No.: |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## NATURE OF ACTION

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the Centers for Medicare & Medicaid Services to produce records sought by Plaintiffs in February 2021.

1

**JURISDICTION AND VENUE**

2.      Jurisdiction is proper, and venue is appropriate in this judicial district, under the FOIA, 5 U.S.C. § 552(a)(4)(B).

**PARTIES**

3.      Plaintiff Alcresta Therapeutics, Inc. is a small company focused on innovative enzyme-based products designed to address nutritional challenges faced by medically fragile persons living with gastrointestinal disorders and rare diseases.  Alcresta developed and manufactures RELiZORB, a digestive enzyme-packed device that enhances enteral feeding—i.e., delivery of nourishment directly to a patient's gastrointestinal tract—for the sickest and most vulnerable of patients with cystic fibrosis, pancreatitis, pancreatic cancer, or other serious diseases who suffer from fat malabsorption and are, as a result, severely malnourished, underweight, have decreased lung function, and suffer from significant gastrointestinal symptoms.  RELiZORB helps the digestive process by breaking down fats in enteral-tube feeding formula into an absorbable form, enabling patients to absorb more calories and the essential fatty acids that are critical for growth and development as well as reduce gastrointestinal symptoms associated with fat malabsorption.  Alcresta is headquartered in Newton, Massachusetts.

4.      Plaintiff James Henry is a Medicare beneficiary whose physician prescribed RELiZORB to improve his health and treat his underlying health issues.

5.      Plaintiff Stephanie Webster is an attorney who filed a request for records under the FOIA, 5 U.S.C. § 552, on behalf of plaintiffs Alcresta Therapeutics, Inc. and James Henry.

6.      Defendant Xavier Becerra is the Secretary of the Department of Health and Human Services ("HHS"), the federal agency that oversees the Centers for Medicare & Medicaid Services

("CMS").  References to the Secretary are meant to refer to him, his subordinate agencies and officials, and to his official predecessors or successors as the context requires.

7.      Defendant Chiquita Brooks-LaSure is the Administrator of CMS.  CMS is the operational component of HHS to which the Secretary has delegated authority to oversee the operations of the Medicare program under the Medicare Act, as well as a nationwide, standard coding medical system known as the Healthcare Common Procedure Coding System ("HCPCS"), which is used by health care providers, suppliers, and patients in submitting claims to all health care payors, including private insurers, Medicare, and Medicaid.

<h3 style="text-align:center">STATUTORY AND REGULATORY BACKGROUND</h3>

**A.      FREEDOM OF INFORMATION ACT**

8.      The FOIA requires federal agencies to release records to the public upon request unless a statutory exemption to the disclosure requirement applies.  5 U.S.C. §§ 552(a), (b).  If any portion of a requested record is exempted from disclosure, agencies are required to release "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt[.]" 5 U.S.C. § 552(b).

9.      The FOIA requires federal agencies to respond to record requests and appeals within 20 working days.  5 U.S.C. §§ 552(a)(6)(A)(i)-(ii).  In "unusual circumstances," an agency may delay its response to a FOIA request or appeal, but in those cases, the agency must provide notice to the requester along with an expected date by which a determination will be issued.  5 U.S.C. § 552(a)(6)(B); *see also* 42 C.F.R. § 401.100 *et seq*. (CMS regulation governing FOIA appeals process and timeline).

10.     If the agency does not timely respond to requests for records or appeals of denials of records, the requester may file an action in this court "to enjoin the agency from withholding

agency records and to order the production of any agency records improperly withheld from the complainant." *See* 5 U.S.C. § 552(a)(4)(B).

B.   **CODING, COVERAGE, AND PAYMENT FOR ENTERAL NUTRITION PRODUCTS AND RELIZORB**

11.   The Medicare Program, administered by CMS, provides health insurance for aged and disabled Americans under Title XVIII of the Social Security Act, the Medicare Act. 42 U.S.C. § 1395 *et seq.*

12.   Part B of the Medicare Act offers beneficiaries coverage for certain medically necessary and reasonable costs for "medical and other health services," including enteral nutrition products. 42 U.S.C. §§ 1395k(a)(2)(B) (providing Part B coverage for "medical and other health services"), 1395k(a)(2)(I) (providing Part B coverage for "prosthetic devices"); 42 C.F.R. § 421.210(b)(2) (designating Durable Medical Equipment, Prosthetics, and Orthotics ("DMEPOS") claims as including enteral nutrition and supplies); Medicare Benefit Policy Manual, ch. 15, § 120.A (agency defining "prosthetic devices" to include "parenteral and enteral (PEN) nutrition"); Medicare Claims Processing Manual ("Manual"), ch. 20, § 10 (establishing claim payment process for PEN items and stating that PEN items fall under Durable Medical Equipment Medicare Administrative Contractor ("DME MAC") payment approvals).

13.   A "national coverage determination" ("NCD") is "a determination by the Secretary with respect to whether or not a particular item or service is covered nationally" by Medicare. 42 U.S.C. §§ 1395ff(f)(1)(B), 1395y(l)(6)(A). A "local coverage determination" ("LCD") is "a determination by a fiscal intermediary or carrier . . . respecting whether or not a particular item or service is covered on an intermediary- or carrier-wide basis." 42 U.S.C. §§ 1395ff(f)(2)(B), 1395y(l)(6)(B).

14.     In 1984, CMS adopted an NCD for Enteral and Parenteral Nutritional Therapy (180.2), providing that enteral nutrition is considered "reasonable and necessary" where "a patient with a functioning gastrointestinal tract who, due to pathology to, or non-function of, the structures that normally permit food to reach the digestive tract, cannot maintain weight and strength commensurate with his or her general condition."[1]   In February 2021, all four DME MACs published a proposed "joint" and nationwide LCD for enteral nutrition that would expand coverage for RELiZORB under the controlling NCD by providing that RELiZORB is a reasonable and necessary treatment for Medicare beneficiaries who meet the enteral nutrition coverage criteria and have a diagnosis of Exocrine Pancreatic Insufficiency.   The proposed LCD was published as a "Future Effective LCD" on July 22, 2021 and took effect on September 5, 2021 for any services performed on or after that date.[2]

15.     The Medicare statute and regulations generally provide for payment under a nationwide fee schedule for enteral nutrition based on reasonable charges from a prescribed base period, 1995. *See* 42 C.F.R. 414.104(b) (establishing 1995 base year for PEN from 2002 onwards); *see also* 42 U.S.C §§ 1395u(a), (s), 1395m(a)(2)-(3), (8); Balanced Budget Act of 1997, Pub. L. No. 105-33 § 4551(b), 111 Stat. 251, 457-58; 66 Fed. Reg. 45,173, 45,174 (Aug. 28, 2001); 83 Fed. Reg. 56,922, 57,046 (Nov. 14, 2018); 42 C.F.R. §§ 405.502, 414.102(a), 414.105, 414.442(b). CMS updates the enteral nutrition fee schedule on a periodic basis. *See* 42 C.F.R. §§ 414.210(g) (discussing fee schedule adjustments for competitive bidding programs), 414.105, 414.422(b).

---

[1] *See National Coverage Determination (NCD) for Enteral and Parenteral Nutritional Therapy (180.2)*, Centers for Medicare & Medicaid Services, (July 11, 1984), https://www.cms.gov/medicare-coverage-database/details/ncd-details.aspx?NCDId=242&ncdver=1&DocID=18.2&SearchType=Advanced&bc=IAAAABAAAAAA&.

[2] *See Local Coverage Determination:  Enteral Nutrition (L38955)*, Centers for Medicare & Medicaid Services, (July 22, 2021), https://www.cms.gov/medicare-coverage-database/view/lcd.aspx?lcdid=38955.

16.     CMS administers HCPCS, the nationwide, standard coding system that is used by health care providers, suppliers, and patients in submitting claims to all health care payors, including private insurers, Medicare, and Medicaid.  42 U.S.C. § 1320d-2; 45 C.F.R. § 162.1002.

17.     This coding plays a critical role in the success of new medical devices because a separate code is a necessary predicate to payment or coverage by public and private insurers.  *See Alcresta Therapeutics, Inc. v. Azar*, 755 F. App'x 1, 4-5 (D.C. Cir. 2018) (despite that "[c]oding and pricing may well be two separate processes," "[h]ere, Relizorb's encumbered code acts as an absolute barrier to meaningful reimbursement," and it is "reasonably possible that a new billing code would prompt HHS to reimburse Relizorb separately").  Without a valid code, a medical claim cannot be processed, paid, covered, or even appealed.  *See id.* (describing the importance of coding decisions).

18.     For a newly coded product that is not yet on the national fee schedule, a Medicare contractor is required to set a payment amount based on a predetermined "gap-filling" methodology reflecting suppliers' reasonable charges for the product and local pricing factors.  *See* 42 U.S.C. § 1395u(a), (s) (calling for use of "[M]edicare [A]dministrative [C]ontractors" to administer Part B based on reasonable charges); 42 U.S.C. §§ 1395m(a)(2)-(3), (8) (mandating that fee schedule amounts for DME generally be based on average reasonable charges from 1986 and/or 1987, increased by annual covered item update factors); 42 C.F.R. § 414.102(a) (requiring payment of 80% of the lesser of "actual charge[s]" or "[t]he fee schedule amount for the item or service"); Manual. ch. 23, §§ 60, 60.3 (directing contractors to "gap-fill" the fee schedule "for items for which charge data were unavailable during the fee schedule data base year" using supplier prices where there is no national or neighboring regional fee schedule amount for new item or other comparable equipment); 42 U.S.C. § 1395m(a)(14)(L) (describing payment rules for covered

DME items); *see also Almy v. Sebelius*, 749 F. Supp. 2d 315, 332-33 (D. Md. 2010) (distinguishing locally established gap-filled payment amounts from national fee schedule amounts) *aff'd*, 679 F.3d 297, 311 n.4 (4th Cir. 2012) (same).

19.     Medicare Administrative Contractors, not CMS, make initial determinations on Medicare coverage and payment.  *See* 42 U.S.C. § 1395kk-1 (authorizing use of contractors to determine "the amount of the payments required pursuant to [the Medicare Act]"); 42 C.F.R. §§ 405.920, 405.924(b); *see also* 42 C.F.R. §§ 421.400 (codifying use of Medicare Administrative Contractors), 421.100 (contractors "determin[e] the amount of payments to be made" on claims). When making claim determinations, Medicare Administrative Contractors are bound by the Medicare Act, the controlling regulations, applicable NCDs, and agency manuals.  *See* 42 U.S.C. § 1395kk-1 (contractors are bound by Medicare Act in determining payment amounts on behalf of Secretary); 42 C.F.R. §§ 405.1063 ("All laws and regulations pertaining to the Medicare and Medicaid programs" are binding in claims process), 405.1060(a)(4) ("An NCD is binding" on program contractors); Manual, ch. 1, § 01 ("[T]he instructions in this chapter apply . . . to the contractors that process [Medicare] claims").

20.     On December 3, 2018, as a result of a successful appeal to the D.C. Circuit of a denial of a preliminary injunction filed by Alcresta, CMS issued RELiZORB a separate HCPCS code to use for medical billing.  The agency also changed the Medicare coverage indicators on RELiZORB's coding to reflect that claims were payable by Medicare Part B, subject to "Contractor Discretion," effective January 1, 2019.[3]

---

[3] *See HCPCS Code B4105*, HCPCS Codes, https://hcpcs.codes/b-codes/B4105/ (last visited Apr. 25, 2022)(HCPCS B4105 RELiZORB code identified as Parenteral and Enteral Nutrition); 2019 Corrections to the Alpha-Numeric HCPCS File, Centers for Medicare & Medicaid Services, https://www.cms.gov/Medicare/Coding/HCPCSReleaseCodeSets/Alpha-Numeric-HCPCS-Items/2019-Corrections-to-Alpha-Numeric-HCPCS-File (last visited Apr. 25, 2022).

21.     Because RELiZORB was then considered a newly coded product that was not yet

on the national fee schedule for enteral nutrition therapy, on December 20, 2018, CMS also issued

Technical Direction Letter 190132 to Medicare contractors on processing claims for RELiZORB,

which directs the contractors to calculate the fee schedule amount for RELiZORB "in accordance

with the gap-filling methodology in section 60.3 of Chapter 23 of the Medicare Claims Processing

Manual."  *See* Pls.' Mot. Summ. J., Ex. 3, *Henry v. Azar*, 1:20-cv-01144-CKK (D.D.C. May 3,

2020), ECF No. 8-4 at 2.

## FACTUAL AND PROCEDURAL BACKGROUND

22.     By letter dated February 23, 2021, Stephanie Webster filed a FOIA request with the

CMS Freedom of Information Officer (the "FOIA Request") on behalf of her clients, Alcresta

Therapeutics, Inc. and James Henry.  Exhibit 1.

23.     The FOIA Request sought copies of "any instruction, email or letter

correspondence, or other communication between CMS and Medicare program contractors, from

December 2018 to the present, concerning the price of or payment or coding for RELiZORB

(HCPCS Code B4105), an enteral nutrition product that is available to Medicare beneficiaries."

*Id.*

24.     In the FOIA Request, the requesters explained that they believed the records would

be maintained by "one or all of three CMS components in the Center for Medicare:  the Chronic

Care Policy Group, the Provider Billing Group, and the Medicare Contractor Management Group."

*Id.*  The FOIA Request further explained that the records would also be maintained by Medicare

contractors such as "the Qualified Independent Contractor (QIC), Maximus Federal Services, and

all DME MACs (including but not limited to CGS Administrators and Noridian Healthcare

Solutions)."  *Id.*  The Plaintiffs cannot elsewhere obtain the requested information, which is in the sole custody and control of CMS.

25.     The FOIA Request sought these records in connection with ongoing disputes with CMS and its contractors about medical coding, as well as Medicare coverage and payment, for RELiZORB.  Exhibit 1; s*ee James Henry, et al. v. Becerra*, 1:21-cv-00747-CKK (D.D.C. 2021); *James Henry, et al. v. Azar*, 1:20-cv-01144-CKK (D.D.C. 2020); *Alcresta Therapeutics, Inc., et al. v. Azar*, No. 18-5192 (D.C. Cir. 2018); *Alcresta Therapeutics, Inc. v. Azar*, 1:18-cv-00243-TJK (D.D.C. 2018).  The FOIA Request sought expedited processing due to the need for these records in the ongoing litigation.  Exhibit 1.

26.     By letter dated February 24, 2021, CMS acknowledged receipt of the FOIA Request.  Exhibit 2.  And by letter dated March 4, 2021, CMS denied the request for expedited processing and claimed that there was no "compelling need," nor any "other circumstances that warrant expedited processing."  Exhibit 3.

27.     By letter dated May 28, 2021, CMS responded to the FOIA Request and explained that there was a total of 52 responsive pages (the "FOIA Response").  Exhibit 4.  The FOIA Response explained that 22 pages would be released in full, portions of 27 of the released pages would be redacted pursuant to Exemption (b)(5) of the FOIA, and three pages would be withheld in their entirety pursuant to Exemption (b)(5) of the FOIA.  *Id.*

28.     By letter dated June 23, 2021, the requesters timely appealed CMS's May 28, 2021 determination to withhold large portions of 30 pages of material produced in response to the FOIA Request (the "FOIA Appeal").  Exhibit 5.  The FOIA Appeal raised three fundamental issues with the FOIA Response:  (i) the withheld information is not predecisional or deliberative; (ii) CMS

failed to release any reasonable segregable portions of the records; and (iii) CMS's search for responsive records appeared to be insufficient.  *Id.*

29.     *First*, contrary to CMS's assertion that portions of otherwise responsive material were being withheld as containing "predecisional and deliberative information," the information in question instead concerns the details of already-decided agency payment policy and related facts.  *Id.*

30.     The first page of the responsive records CMS produced, in which the contractor asked CMS to explain a policy that the agency had already established, exemplifies this fact.  In a March 1, 2019 email, Carolyn Helton from CGS Administrators, a Medicare contractor, wrote to Joel Kaiser of CMS concerning claims for RELiZORB and asked, "Could you please give me the company's price and date *that you* [CMS] *used to get the gap-filled fee*.  Exhibit 4 at 4-5 (emphasis added).  The question was phrased in the past tense, indicating that a gap-filled payment amount had already been established by CMS and that CMS's policy had been set.  However, CMS's response to this inquiry, a reply email from Joel Kaiser to the contractor dated March 1, 2019, was redacted in full.  *Id.*  The context of that exchange makes clear that the responsive email would "merely state or explain agency decisions"—here the payment amount for RELiZORB—and cannot be considered predecisional.  *Judicial Watch, Inc. v. Dept. of Health and Human Servs.*, 27 F. Supp. 2d 240, 245 (D.D.C. 1998) (the "deliberative process privilege does not protect documents that merely state or explain agency decisions").

31.     By withholding this type of communications, CMS is inappropriately working from a body of "secret law" that it applies "in the discharge of its regulatory duties and in its dealings with the public."  *Elec. Frontier Found'n v. U.S. Dept. of Justice*, 739 F.3d 1, 7 (D.C. Cir. 2014) (citing *Schlefer v. U.S.*, 702 F.2d 233, 244 (D.C. Cir. 1983)).  The documents at issue here,

including the redacted March 1, 2019 email from CMS to its contractor, reflect a directive from a higher authority (CMS) to its subordinate (the Medicare contractor) regarding the implementation of an already-made decision.  *See* Mot. Summ. J., *Henry v. Becerra*, 1:21-cv-00747-CKK (D.D.C. Apr. 14, 2021), ECF No. 9 at 22 (explaining how CMS instructed Medicare contractor to pay RELiZORB claims).

32.     In particular, the contractor asked CMS how it had determined the payment amount on RELiZORB claims.  Exhibit 4 at 4-5.  CMS's response, which was inappropriately redacted, presumably answers the contractor's question about the earlier agency decision.  *Id.*  Accordingly, this record is not exempt from disclosure because it is not predecisional.  *See Elec. Frontier Found'n*, 739 F.3d at 9 ("the agency was required to disclose a document that represented a conclusive or authoritative statement of its policy, usually a higher authority instructing a subordinate on how the agency's general policy applies to a particular case, or a document that determined policy or applied established policy").  This redacted information bears all the hallmarks of being "secret law," and its withholding—which means that beneficiaries, suppliers, and stakeholders do not and cannot know with certainty how the payment for their claims is calculated—cannot be justified under the FOIA.

33.     Moreover, the redacted information is not deliberative.  The contractor asked the agency to provide information about a decision that had already been made.  Exhibit 4 at 4-5.  This exchange is not a "give-and-take" of ideas between parties, but is instead a subordinate contractor asking the higher authority agency to explain its already-determined policy.  *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  Indeed, the contractor asked CMS to provide a simple fact—the price point that the agency had determined to use for RELiZORB

claims.  Exhibit 4 at 4-5.  Factual information is generally not deliberative, and it is not deliberative here.  *Environmental Protection Agency v. Mink*, 410 U.S. 73, 107-08 (1973).

34.     Another example of withheld information that is not predecisional or deliberative can be found in a May 22, 2019 email from Edith Hambrick of CMS to other CMS personnel. Exhibit 4 at 7-8.  Here, the author explained that the D.C. Circuit Court of Appeals ordered the agency to make payment for RELiZORB claims and noted that "[a]fter the Court Order, a number of actions were taken," and invited the recipients to "[p]lease see attached for further discussion." *Id.*  Again, the use of the past tense in this communication reflects that CMS had already adopted its policy—"a number of actions *were taken*"—and that there was no deliberation or exchange of ideas regarding a future decision happening at the time of the email, which simply summarized those prior actions.  *Brinton v. Dept. of State*, 636 F.2d 600, 605 (D.C. Cir. 1980) (documents that explain agency policy are not predecisional).

35.     Yet another example of withheld information that is not predecisional or deliberative is an August 2, 2019 exchange between Joel Kaiser of CMS and Carolyn Helton of Medicare contractor CGS Administrators.  Here, CMS asked the contractor to provide "the pricing spreadsheet(s) that the DME MACs used to establish the fee schedule amounts for Relizorb." Exhibit 4 at 20.  The contractor responded and apparently provided the requested information, but the spreadsheet was not included in the FOIA Response.  *Id.*  A spreadsheet, by its very nature, is a collection of factual data points that cannot be considered deliberative and does not reflect the exchange of ideas with the agency.  *See, e.g.*, *Coastal States*, 617 F.2 at 867 (holding that deliberative process privilege only applies to "opinion" or "recommendatory" portions of documents, not factual information).

36.     Moreover, the fact that this communication is again phrased in the past tense—"the spreadsheet(s) the [contractors] *used* to establish the [payment amount]," Exhibit 4 at 20—and followed a March 1, 2019 communication in which CMS told the contractor of its determination on the gap-filled fee for RELiZORB (*id.* at 4-5), further underscores that this information is post-decisional and is not the product of agency deliberations.

37.     *Second*, the FOIA Appeal explained that the agency did not release all reasonably segregable portions of the records, as required by FOIA.  Exhibit 5.  The text of the FOIA requires that "any reasonably segregable portion of a record" must be released unless an exemption to disclosure applies.  5 U.S.C. § 522(b).

38.     Here, the CMS Division of FOIA Analysis received a total of 52 pages from agency personnel responsive to the FOIA Request.  Exhibit 4 at 1.  Out of those 52 pages, CMS produced a total of 50 pages comprising (i) 22 pages in their entirety; (ii) 27 pages with significant redactions; and (iii) one explanatory page indicating that CMS withheld three responsive pages in their entirety.  *Id.*  CMS has not justified the extent of these redactions, as required by law.  *See Durrani v. Dept. of Justice*, 607 F. Supp. 2d 77, 88 (D.D.C. 2009) (agencies must show that "exempt and nonexempt information are 'inextricably intertwined,' such that excision of exempt information would impose significant costs on the agency and produce an edited document with little information value") (citing *Mays v. Drug Enforcement Agcy.*, 234 F.3d 1324, 1327 (D.C. Cir. 2000)).

39.     Courts have, in the past, required agencies to conduct a line-by-line analysis of each responsive record to justify their withholdings.  *See Schoenman v. Fed. Bureau of Investigation*, 841 F. Supp. 2d 69, 84 (D.D.C. 2012) (agency's "line-by-line review of each document in an attempt to identify and release non-exempt portions of each document" satisfied requirement to

reasonably segregate non-exempt information).  There is no indication that such a review happened here, and the relatively small number of responsive materials at issue, only 52 pages, means that subjecting the records to this level of scrutiny would not pose an undue burden on the agency.

40.    *Third*, the FOIA Appeal explained that the paucity of responsive documents suggests CMS did not conduct a proper search for responsive records in accordance with its obligations.  Exhibit 5.  Courts are clear on the agency's FOIA obligations:  "In determining whether an agency has discharged its FOIA responsibilities, the issue [courts] must resolve is whether the search for documents was adequate, 'and adequacy is measured by the reasonableness of the effort in light of the specific request.'"  *Larson v. Dept. of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) (quoting *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986)).

41.    Here, in light of the ongoing dispute regarding coverage and reimbursement for RELiZORB, *see James Henry, et al. v. Becerra*, 1:21-cv-00747-CKK (March 22, 2021); *see also James Henry, et al. v. Azar*, 2021 WL 429967 (D.D.C. 2021) (challenging payment for RELiZORB claim); *Alcresta Therapeutics, Inc. v. Azar*, 755 Fed. Appx. 1 (D.C. Cir. 2018) (challenging proper coding and payment for RELiZORB), it seems likely that the agency generated more than a mere 52 pages of responsive materials in its attempts to address these issues with its contractors.

42.    In fact, a Medicare contractor has otherwise confirmed that it received email instructions from CMS on payment for RELiZORB claims in the context of a 2020 claims appeal. In that appeal, a contractor read from an email during an ALJ hearing that they received from CMS explaining the calculation of the reimbursement amount.  *See* Pls.' Mot. Summ. J., Ex. 3, *Henry v. Becerra*, 1:21-cv-00747-CKK (D.D.C. 2021), ECF No. 9-3.  The contractor refused to produce the email with CMS in response to requests by the ALJ and the beneficiary, again improperly invoking the "deliberative process privilege."  *See id.*

43.     In another 2020 claims appeal, in response to the ALJ's request for additional information from the DME MAC regarding how the payment amount was calculated, the DME MAC responded that "[i]n establishing the fee [for RELiZORB], we used the retail price of $49.00 per cartridge from 2016." *See* Order of Dismissal, OMHA Appeal No. 3-9271944711 (Aug. 31, 2020), Ex. 1, Pls.' Notice of Further Administrative Dismissal, *Henry v. Azar*, 1:20-cv-01144-CKK (D.D.C. Sept. 17, 2020), ECF No. 21-1 at 9.  This information on RELiZORB's purported 2016 retail price, which is not publicly available and was presumably provided by CMS to the contractor, was not disclosed in the agency's FOIA Response.

44.     In addition, the brief timespan covered by the responsive records, which range only from March 1, 2019 to August 2, 2019, suggests that the agency's search was not adequate, especially in light of the ongoing dispute concerning RELiZORB claim pricing.  *See Henry v. Becerra*, 1:21-cv-00747-CKK (D.D.C. 2021), Complaint, ECF No. 1 at 19 (explaining prior litigation involving RELiZORB coding and pricing, dating back to 2015 and continuing to this day).

45.     CMS acknowledged receipt of the requesters' FOIA Appeal in a letter dated July 28, 2021.  Exhibit 6.

46.     Long after the 20-day period for processing their appeal had passed, requesters' counsel made several attempts to contact Mr. Hugh Gilmore (Director of the Freedom of Information Group at CMS), who was the point of contact listed on CMS's acknowledgment of the FOIA Appeal, via telephone and email.  *See* Exhibit 7 (November 10, 2021 and January 6, 2022 emails from requesters' counsel to Mr. Gilmore).  Requesters' counsel never received a response from Mr. Gilmore.

47.     On March 1, 2022, Ms. Desiree Gaynor (CMS Freedom of Information Group) called requesters' counsel and explained that a request had been submitted to run a search for any additional records that might be responsive to the FOIA Request.

48.     By email dated April 15, 2022, requesters' counsel followed up with Ms. Gaynor and asked for a status update on the FOIA Appeal.  Exhibit 8.

49.     By email dated April 18, 2022, Ms. Gaynor responded that "[a]n additional search was completed and we have received some additional documents from the component."  *Id.*  Ms. Gaynor explained that "[t]he records we received have to be reviewed to determine whether or not they are responsive to your request."  *Id.*

50.     The April 18, 2022 email from Ms. Gaynor further shows that CMS did not conduct a proper search for documents in response to the FOIA Request.

51.     It has now been more than one year since the requesters filed their original FOIA Request in February 2021 and more than 10 months since the requesters filed their FOIA Appeal. In that time, the agency has not produced all responsive records as required by the FOIA.

<u>**COUNT ONE**</u>
**(Failure to Produce Records Under the FOIA)**

52.     Plaintiffs repeat the allegations in paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53.     Plaintiffs, through their February 23, 2021 FOIA Request, properly requested records that are created by, maintained by, and in the sole custody and control of CMS.

54.     The FOIA requires agencies to respond to information requests within 20 working days.  5 U.S.C. § 552(a)(6)(A)(ii); *see also, e.g., Citizens for Responsibility and Ethics in Wash. v. Fed. Elections Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2014) ("So, within 20 working days (or 30 working days in 'unusual circumstances'), an agency must process a FOIA request and make a

16

'determination'") (Kavanaugh).   Under the FOIA, a requester has exhausted his or her administrative remedies once the agency fails to respond to a request within the statutory timeframe.  5 U.S.C. § 552(a)(6)(C)(i).

55.   The FOIA requires district courts to "determine the matter de novo," and "expressly places the burden 'on the agency to sustain its action.'"  *U.S. Dept. of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 755 (1989) (citing 5 U.S.C. § 552(a)(4)(B)).  And, "[i]f an agency improperly withholds any documents, the district court has jurisdiction to order their production."  *Id*.

56.   Plaintiffs filed their request in February 2021 and filed their appeal of the agency's response on June 23, 2021, which the agency acknowledged in July 2021.  Despite this continued pursuit, Plaintiffs still have not received a complete set of responsive records from CMS during the 14 months that this request has been pending.

57.   By failing to release agency records to the public, CMS has violated its statutory obligations under the FOIA and cannot meet its statutory burden to sustain the agency's inaction.

**REQUEST FOR RELIEF**

58.   WHEREFORE, the Plaintiffs request that this Court issue an Order:

a.   Declaring that CMS violated the FOIA by failing to respond timely, properly, and fully to the Plaintiffs' February 23, 2021 FOIA Request and the June 23, 2021 FOIA Appeal;

b.   Ordering CMS to process and immediately release all responsive records described in the Plaintiffs' FOIA Request and FOIA Appeal;

c.   Retaining jurisdiction of this action to ensure CMS's compliance with this Order;

      d.      Awarding reasonable costs and attorney fees, as permitted under the FOIA,

5 U.S.C. § 552(a)(4)(E); and

      e.      Granting such other relief as the Court may consider appropriate.

Respectfully Submitted,


/s/ Stephanie A. Webster
Stephanie A. Webster
  D.C. Bar No. 479524
James H. Richards
  D.C. Bar No. 469524
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, D.C. 20006-6807
T: (202) 508-4859
F: (202) 383-9334
stephanie.webster@ropesgray.com

*Attorneys for Plaintiffs*

Peter C. Diliberti

*Of Counsel*

Dated:  April 26, 2022

**EXHIBITS**

Exhibit 1        FOIA Request, February 23, 2021

Exhibit 2        Acknowledgment of Receipt of FOIA Request, February 24, 2021

Exhibit 3        Denial of Request for Expedited Processing, March 4, 2021

Exhibit 4        Response to February 23, 2021 FOIA Request, May 28, 2021
                 (including attached responsive documents)

Exhibit 5        FOIA Appeal, June 23, 2021
                 (attachments omitted)

Exhibit 6        Acknowledgment of Receipt of FOIA Appeal, July 28, 2021

Exhibit 7        Requests for Update on Status of FOIA Appeal, November 10, 2021 and
                 January 6, 2022

Exhibit 8        Request for Update on Status of FOIA Appeal, April 15, 2022, and
                 Response, April 18, 2022